# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAMUEL BARRERA, *individually and on behalf of all others similarly-situated*, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No.: 1:17-cv-05668<br>)<br>) Hon. John R. Blakey |
| v. | )<br>) |
| GUARANTEED RATE, INC., a Delaware corporation, | ) **CLASS ACTION**<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OF DEFENDANT GUARANTEED RATE, INC. IN SUPPORT OF ITS MOTION TO STAY THIS CASE PENDING THE FCC's DETERMINATION

Givonna S. Long (#6290076)
Kelley Drye & Warren LLP
333 W. Wacker Dr.
Chicago, Illinois 60606
glong@kelleydrye.com

Lauri A. Mazzuchetti (*pro hac vice*)
Kelley Drye & Warren LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
lmazzuchetti@kelleydrye.com

Defendant Guaranteed Rate, Inc. ("GRI") respectfully submits this memorandum of law in support of its motion stay this case pending the FCC's determination of the definition of automatic telephone dialing system ("ATDS").

## INTRODUCTION

The Class Action Complaint ("Complaint") filed by plaintiff Samuel Barrera ("Plaintiff") alleges that GRI violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, based on Plaintiff's claim that GRI called him using an ATDS without his consent. Plaintiff seeks to pursue his own claims, as well as those of an alleged putative class, thereby hoping to expose GRI to massive aggregated statutory damages that Plaintiff claims should be awarded under the TCPA. The success of Plaintiff's individual and class claims hinges on the threshold question of whether GRI used equipment that qualifies as an ATDS, as that term is defined by the TCPA, to call Plaintiff and/or the putative class. Indeed, if GRI did not use an ATDS, the TCPA does not apply and neither Plaintiff nor the alleged absent class has any claim.

On Friday, March 16, 2018, the United States Court of Appeals for the District of Columbia Circuit, in *ACA Int'l, Inc. v. Federal Communications Comm'n*, No. 15-1211 (D.C. Cir. Mar. 16, 2018), set aside as arbitrary and capricious the Federal Communication Commissions' ("FCC") 2015 Declaratory Ruling clarifying the definition of ATDS. Of central importance to the instant matter, the D.C. Circuit rejected the FCC's prior rulings that a "predicative dialer" constitutes an ATDS. In doing so, the D.C. Circuit called into question whether equipment qualifies as an ATDS if it does not have the functional ability "to generate random or sequential numbers that it can then dial," but rather only calls specific numbers or numbers from a set list. The D.C. Circuit, quoting from a dissenting commissioner's remarks to the 2015 Declaratory Ruling, further questioned whether an ATDS "must, in fact, be used ***as an autodialer*** to make calls" before a TCPA violation can be found.

Thus, the threshold question in this case – whether the equipment used by GRI falls within the definition of ATDS – cannot be answered until the FCC issues new rulemaking on the issue. This case should, therefore, be stayed. If the FCC determines that equipment that calls consumers on specific telephone numbers – as opposed to numbers generated by a computer -- does *not* violate the TCPA, then even Plaintiff should agree that Plaintiff has no claim against GRI. As such, it does not make sense for the parties' or this Court to expend significant resources on intensive discovery and further litigation until the standard governing the ATDS trigger is announced. This Court should exercise its inherent authority and stay this matter pending the FCC's ruling on the definition of an ATDS.

**FACTUAL BACKGROUND**

A. **Plaintiff's Allegations and Admissions with Respect to the Web Form**

Plaintiff alleges that on July 5, 2017, he filled out a Web Form to obtain a free mortgage quote from GRI, and provided his cell phone number in the "Preferred Phone Number" field for that purpose. (Complaint (Dkt. No. 1), ¶¶27-41). In response to his request for a quote, on July 6, he received telephone calls from GRI on the cell phone number that he provided as his "Preferred Phone Number." (*Id*. ¶¶42-44). After GRI made two attempts to reach Plaintiff by phone that were not answered, Plaintiff answered the third call. (*Id*.) Plaintiff claims that the three calls that he received violated the TCPA, alleging they were made "using an ATDS" (*id.* ¶ 45), and were made without his consent.

The basis for Plaintiff's claim that an ATDS was used are his allegations that "[t]he TCPA's definition of an ATDS includes a "predictive dialer," and that GRI was using a predictive dialer. (*Id.* ¶ 18). Plaintiff actually cites in his Complaint to the FCC's 2003 and 2008 Declaratory Rulings, both of which have now been set aside by the D.C. Circuit in *ACA International*, to support his claim that the ATDS element is satisfied if GRI used predictive dialer equipment. (*Id.*

¶ 18). Thus, the premise relied upon by Plaintiff to support an essential element of his claim – that a predictive dialer constitutes an ATDS – is no longer the law.

With respect to Plaintiff's claim that he did not consent to receive any call from GRI, Plaintiff argues that he was unable to view on his computer screen, without scrolling, the TCPA-compliant disclosure and consent language that was placed directly beneath the fields that he populated when he requested a mortgage rate quote. Although Plaintiff claims that he "was not aware that he would be receiving . . . calls as a result of using [GRI's] website," (see Dkt. No. 1 at 45), when he answered the call from GRI, he said "I didn't think you guys were gonna call *this quick*." Declaration of Givonna Long ("Long Decl.") attached hereto as Exhibit 1, ¶3, Ex. A (emphasis added). Given Plaintiff's claim, a central focus of discovery in this case is what Plaintiff viewed on his computer screen when he populated the web form at issue, and whether Plaintiff's viewing experience was the same as other viewers, including those who expressed that they not only expected to receive a call from GRI in response to their request, but appreciated receiving the call.

Plaintiff seeks to represent a nationwide class, and proposes a class definition that incorporates and hinges on the threshold question of the use of an ATDS: "[a]ll persons . . . who provided their cell phone number on Defendant's [Web Form] and then received a non-emergency telephone call from Defendants, or any party acting on its behalf, to a cellular telephone *through the use of an automated telephone dialing system* or an artificial or prerecorded voice." (*Id.* ¶52 (emphasis added).

### B. The Status of Discovery

On September 28, 2017, the parties exchanged initial disclosures pursuant to the Mandatory Initial Discovery Pilot Project. (Long Decl., ¶4) On November 20, 2017, the parties each served written discovery. (Long Decl., ¶5) Plaintiff's First Set of Interrogatories and First

Set of Requests for Production of documents on GRI (collectively, "Plaintiff's Discovery Requests"), seek broad categories of documents, data and information related to, among other things, the purported use of an ATDS. (Long Decl. ¶¶5-6, Exs. B and C, Plaintiff's Interrogatory No .12, Plaintiff's RFPs Nos. 16-18). Plaintiff also seeks sweeping discovery regarding every person GRI called based on information obtained from the "Ad Page." (*Id.*, Plaintiff's Interrogatory Nos. 8-9, Plaintiff's RFPs Nos. 19-23). Additionally, Plaintiff seeks all of the "evidence" of consent on which GRI may rely for any person contacted by GRI and information regarding how many calls were made to cellular telephone numbers (*Id.*, Plaintiff's Interrogatory Nos. 7 and 11, Plaintiff's RFPs No. 24).

While the parties have made significant progress in discovery thus far, a substantial amount of work remains to be completed. Thus far, the parties have responded to written discovery requests, worked cooperatively to resolve disputes regarding the responses provided, and have each supplemented their written responses. The parties, however, have reached an impasse as to whether GRI must produce call records and other class data requested by Plaintiff and a motion to compel is now pending before this Court. GRI will address in its opposition to that motion in a separate briefing.

The parties have also served deposition notices on one another and are in the process of scheduling such depositions. In addition, the parties are working to agree to a protocol that will govern the inspection and examination of Plaintiff's computer by a forensic computer expert. At this point, Plaintiff's counsel will not indicate whether they will agree to any inspection at all, without first reviewing a protocol for the proposed inspection.

Under the Court's present schedule, the parties must: complete fact discovery by April 20, 2018; Plaintiff must serve an expert report and class certification motion by May 18, 2018; GRI must serve its expert report and class certification motion by July 3, 2018; Plaintiff must serve his

rebuttal report and class certification motion by July 24, 2018. It is anticipated that the parties will have experts on, among other issues, the question of whether GRI's equipment falls within the definition of ATDS.

**ARGUMENT**

I. **THIS CASE SHOULD BE STAYED PENDING THE FCC'S CLARIFICATION WITH RESPECT TO THE DEFINITION OF WHAT CONSTITUTES AN "ATDS"**

   A. **The D.C. Circuit's Decision.**

Plaintiff's Complaint alleges that GRI violated the TCPA because GRI, among other things, allegedly "called him using an ATDS." (Complaint, ¶ 45). The Complaint further alleged that "[t]he TCPA's definition of an ATDS includes a 'predictive dialer.'" (Complaint (Dkt. No. 1), ¶¶16-18.) The basis for Plaintiff's assertion that a predictive dialer qualifies as an ATDS is the FCC's 2003 and 2008 Declaratory Rulings. (*Id.* at ¶ 18 (*quoting* and *citing to In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003) and *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 556 (2008)). )). As set forth below, these Rulings, as they relate to the definition of ATDS, have now been set aside by the D.C. Circuit in *ACA International*.

By way of background, the TCPA provides that equipment may qualify as an ATDS if it has the capacity to perform *both* of two specific functions: "to store or produce telephone numbers to be called, using a random or sequential number generator;" and "to dial such numbers." *Id.* at 24; 47 U.S.C. § 227(a)(1)(A)-(B). As the D.C. Circuit acknowledged, "[s]ince the TCPA's enactment, the FCC has issued a series of rulemakings and declaratory rulings to address the Act's reach." *ACA Int'l*, No. 15-121, at 8. Given the significant debate over the meaning of ATDS, the use of which determines the threshold question of whether the TCPA applies, several of those rulings sought to clarify which devices for making calls qualify as an ATDS. *Id.* at 23. In the Declaratory Rulings issued in 2003 and 2008, on which Plaintiff relies in his Complaint, the FCC

5

concluded that the statutory definition of ATDS includes "predictive dialers." *Id.* In 2015, the FCC issued an additional declaratory ruling addressing the definition of ATDS that "purports to reaffirm the prior orders." *Id*. at 24.

On Friday, March 16, 2018, the United States Court of Appeals for the District of Columbia Circuit set aside[1] the FCC's rulings[2] on an issue that is at the heart of this case—the definition of ATDS. In *ACA International*, the D.C. Circuit Court of Appeals specifically set aside the FCC's prior rulings, including the 2003 and 2008 Declaratory Rulings relied upon by Plaintiff, that a predictive dialer qualifies as an ATDS.[3] *Id.* at 24-29. In this regard, the D.C. Circuit held that the FCC's prior rulings "in describing the functions a device must perform to qualify as an [ATDS] fails to satisfy the requirement of reasoned decisionmaking. The [FCC's] order's lack of clarity about which functions qualify a device as an [ATDS] compounds the unreasonableness of the Commission's expansive understanding of when a device has the 'capacity' to perform the necessary functions [to be an ATDS]. We must therefore set aside the Commission's treatment of those matters." *ACA Int'l*, No. 15-1211, at 29.

The D.C. Circuit acknowledged that "[w]hile the 2015 ruling indicates in certain places that a device must be able to generate and dial random or sequential numbers to meet the TCPA's

---

[1] Petitioners challenged the FCC's order pursuant to the Hobbs Act, which sets forth the procedural process one must follow to "enjoin, set aside, annul, or suspend any order of the [FCC] under the Communications Act of 1934, 47 U.S.C. § 402(a), and provides that challenges to FCC orders must be made directly to a court of appeals. 28 U.S.C. § 2342(1); 47 U.S.C. §402(a).

[2] *In re Rules and Regulations Implementing the Telephone Consumer Protection* Act of 1991 (2015 Declaratory Ruling), 30 FCC Rcd. 7961 (FCC 2015).

[3] The D.C. Circuit rejected the argument that the Court could not review the FCC's 2003 and 2008 Orders. Specifically, the D.C. Circuit stated that "[a]ccording to the Commission, because there was no timely appeal from those previous orders, it is too late now to raise a challenge by seeking review of a more recent declaratory ruling that essentially ratifies the previous ones. We disagree. While the Commission's latest ruling purports to reaffirm prior orders, that does not shield the agency's pertinent pronouncements from review." *ACA Int'l*, No. 15-121, at 24.

6

definition of an autodialer, it also suggest a competing view: that equipment can meet the statutory definition [of an ATDS] even if it lacks that capacity" such as in the case of a "predictive dialer." *Id.*, at 26. The D.C. Circuit elaborated as to the order's capriciousness:

> So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers). It might be permissible to adopt either interpretation. But the Commission cannot, consistent with reasoned decision making, espouse both competing interpretations in the same order. *Id.*, at 27.

Of import to the matter at hand is an example set forth by the D.C. Circuit where, as here, the situation involves "calling equipment that [businesses] wish to use to call set lists of cellular numbers without generation of random or sequential numbers." *Id.* at 27. Such "set lists" do not involve the generation of random numbers, and therefore may not invoke the TCPA's proscriptions. In setting aside the FCC's Orders, the D.C. Circuit made clear that the FCC needs to provide guidance to parties such as GRI who are "left in a significant fog of uncertainty about how to determine if a device is an ATDS so as to bring into play the [TCPA's] restrictions on unconsented calls." *Id.* at 29. One thing is clear from the D.C. Circuit's decision: if the FCC determines that using equipment to call specific numbers that, for example, consumers provided through web form submission does *not* constitute the use of an ATDS, then Plaintiff has no basis for a TCPA claim against GRI.

GRI, therefore, submits that this matter should be stayed pending the FCC's determination of the definition of an ATDS.

**B.     This Matter Should be Stayed Pending the FCC's Determination.**

Courts have "broad" discretionary power to stay proceedings that is "incidental to the power in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Clinton v. Jones*, 520 U.S. 681, 706 (1997);

7

*Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). How best to apply this broad authority "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* The Courts' broad discretionary power includes the authority to stay a case pending the resolution of similar, potentially controlling issues. *See Texas Independent Producers and Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005); *Genzyme Corp. v. Cobrek Pharm, Inc.*, No. 10-CV-00112, 2011 WL 686807, at *6 (N.D. Ill. Feb. 17, 2011) (exercising inherent power to stay proceeding pending conclusion of PTO reexamination). "In deciding whether to enter such a stay, courts consider the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Ankcorn v. Kohl's Corp.*, No. 15-cv-1303, 2017 WL 395707, at *2 (N.D. Ill. Jan. 30, 2017).

Each of the above-enumerated factors clearly weigh in favoring of staying this matter pending the anticipated determination from the FCC. There is no "tactical disadvantage" Plaintiff may claim if this case is stayed for a limited period of time to permit the FCC to provide its determination with respect to an issue that will determine whether or not Plaintiff's claim can proceed. *See Genzyme Corp.*, 2011 WL 686807, at *2 (granting stay pending reexamination proceedings and rejecting argument that stay should be denied because "reexamination proceedings can last more than six years"). Plaintiff does not claim that he continues to receive calls from GRI, so there is no risk of allegedly ongoing harm. And, the stay will simplify the issues and streamline any potential trial because the parties will have definitive guidance on whether the equipment used by GRI constitutes an ATDS. *See Ankcorn*, 2017 WL 395707, at *2 (granting stay where the "issues under consideration by the D.C. Circuit . . . are relevant to the Defendant's potential liability in the case at hand"); *id.*, at *3 (granting stay where "the issues in

8

[plaintiff's] case remain in dispute and the D.C. Circuit's ruling in *ACA International* will shed light on these issues").

Similarly, a stay will reduce the burden of litigation on the Court and the parties because the FCC's further ruling will likely be the death knell of Plaintiff's claim against GRI. *Id.*, at *2 (granting stay pending a decision in *ACA International* will reduce the burden of litigation on the parties). In light of the uncertainty in the law regarding what constitutes an ATDS, GRI should not be required to engage in significant and costly fact and expert discovery, nor would it even be practical for the parties to put forth expert opinions on whether an ATDS was used. Because the FCC's anticipated determination of what constitutes an ATDS may moot Plaintiff's entire case, this Court should put this case on hold. Thus, GRI submits that a stay of this matter pending the FCC's determination following the D.C. Circuit's remand is warranted.

## **CONCLUSION**

For the foregoing reasons, GRI respectfully requests that this Court grant GRI's motion and stay this matter pending the FCC's determination of what devices constitute an ATDS.

Dated: March 21, 2018       Respectfully submitted,

KELLEY DRYE & WARREN LLP

By:   */s/ Givonna S. Long*
      Givonna S. Long (#6290076)
      Kelley Drye & Warren LLP
      333 W. Wacker Dr.
      Chicago, Illinois 60606
      Phone (312) 857-7084
      glong@kelleydrye.com

      Lauri A. Mazzuchetti (*pro hac vice*)
      Kelley Drye & Warren LLP
      One Jefferson Road, 2nd Floor
      Parsippany, New Jersey 07054
      Phone (973) 503-5900
      lmazzuchetti@kelleydrye.com

      *Attorneys for Defendant Guaranteed Rate, Inc.*

# CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby deposes and states that on March 13, 2018, she caused the foregoing, **Memorandum In Support of Motion for Stay Pending the FCC's Determination**, to be electronically filed using the CM/ECF system which will send notification of such filing to all attorneys of record.


By: */s/ Givonna S. Long*
Givonna S. Long (#6290076)
Kelley Drye & Warren LLP
333 W. Wacker Dr.
Chicago, Illinois 60606
Phone (312) 857-7084
glong@kelleydrye.com

*Attorneys for Defendant Guaranteed Rate, Inc.*