## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL BARRERA, *individually and on behalf of all others similarly-situated*, | ) ) ) | |
| | ) | Civil Action No.: 1:17-cv-05668 |
| Plaintiff, | ) ) | |
| | ) | Hon. John R. Blakey |
| v. | ) ) | |
| GUARANTEED RATE, INC., a Delaware corporation, | ) ) | **CLASS ACTION** |
| | ) | |
| Defendant. | ) | |
| | ) ) ) ) ) ) ) | |

**MEMORANDUM OF DEFENDANT GUARANTEED RATE, INC. IN SUPPORT OF ITS
MOTION TO COMPEL THE EXAMINATION OF PLAINTIFF'S COMPUTER AND
TO PROVIDE RELEVANT DISCOVERY**

Givonna S. Long (#6290076)
Kelley Drye & Warren LLP
333 W. Wacker Dr.
Chicago, Illinois 60606
glong@kelleydrye.com

Lauri A. Mazzuchetti (*pro hac vice*)
Kelley Drye & Warren LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
lmazzuchetti@kelleydrye.com

Defendant Guaranteed Rate, Inc. ("GRI") respectfully submits this memorandum of law in support of its motion to compel the examination of plaintiff Samuel Barrera's computer and to compel plaintiff to provide relevant discovery pertaining to other potential putative class members.

## INTRODUCTION

The Class Action Complaint ("Complaint") filed by plaintiff Samuel Barrera ("Plaintiff") alleges that GRI violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, based on Plaintiff's claim that GRI called him in response to his request for a free mortgage quote, using an automatic telephone dialing system ("ATDS"), without his consent. Plaintiff's lack of consent claim is premised upon the allegation that GRI's TCPA-compliant authorization language was not "clearly and conspicuously" displayed on ***Plaintiff's device*** when he populated the web form requesting his free mortgage quote. The need to inspect that device is self-evident. Plaintiff's unwillingness to allow that inspection casts doubt on his claim and, in any event, must be rejected.

Plaintiff admits that he made an online request to GRI to receive a mortgage quote by populating a web form on GRI's website, on which he provided to GRI his cellular telephone number as his "Preferred Phone Number." It is not disputed that the web form viewed by Plaintiff (the "Web Form") included the precise disclosure and consent language endorsed by the FCC to obtain consent for marketing calls placed using an ATDS. Plaintiff's allegation is that ***he*** did not see the TCPA-compliant disclosure and consent language during ***his browsing experience.***

Plaintiff's Complaint includes a screenshot, which apparently depicts a viewing experience by Plaintiff's counsel and not Plaintiff himself that presents an incomplete view of the Web Form as it would ordinarily be viewed. The screenshot, which Plaintiff defines as the "Ad Page," purposefully omits the TCPA-compliant disclosure that appeared directly beneath the button that consumers clicked when making their request to receive a mortgage rate quote. GRI has tried

repeatedly to obtain more information about Plaintiff's interactions with the web form so that it can determine why (if at all) it would have been displayed as Plaintiff alleges. GRI, therefore propounded a discovery request seeking to examine his device. Despite the fact that Plaintiff's discovery responses make clear that the image attached to the Complaint and other similar images produced thus far *could not have been the images viewed by Plaintiff*—and instead, the images appear to be *what Plaintiff's counsel saw*—he has refused to provide his computer for a forensic examination.

In addition to the issues surrounding Plaintiff's viewing and populating of the Web Form, it has come to GRI's attention that Plaintiff's counsel began advertising on their website kozonislaw.com that they were "investigating claims that Guaranteed Rate, Inc. violated privacy laws in respect to consumers who submitted their information through one of Guaranteed Rate's mortgage quote forms" on July 4, 2017, just one day before Plaintiff populated the Web Form. Plaintiff's counsel's website also advertised that it was investigating whether QuoteWizard "violated phone privacy laws" on July 4, 2017. Plaintiff's facebook friend, Nicholas Lamberis, who populated a web form on Quote Wizard's website on July 10, 2017, sued QuoteWizard on August 3, 2017, and is also represented by Plaintiff's counsel. Thus, a forensic examination of Plaintiff's computer is also necessary to determine whether Plaintiff visited the kozonislaw.com website before he populated the web form, whether the Web Form was completed for a proper purpose and whether there were communications between Plaintiff and Mr. Lamberis regarding the GRI webpage prior to Plaintiff completed the Web Form. At Plaintiff's counsel's request, GRI has submitted two alternative protocols for such an examination, but both were rejected by Plaintiff's counsel without a valid basis.

The law is clear that GRI is entitled to the forensic examination that it properly seeks in discovery because how the web form at-issue was displayed on Plaintiff's device and whether

Plaintiff completed the Web Form after seeing his counsel's advertisement on their website is central and relevant to his claim that the TCPA authorization language was not clearly and conspicuously displayed on his device. GRI is entitled to know how he personally viewed the authorization language and whether Plaintiff completed the Web Form for a proper purpose.

Moreover, GRI is entitled to know who else may have communicated with Plaintiff's counsel in response to the website advertisement. GRI has asked for such information in discovery, but Plaintiff has refused to provide it.

For these reasons and as set forth below, GRI requests that the Court enter an order compelling the forensic imaging and examination of Plaintiff's computer by GRI's forensic expert in the manner outlined in the "Forensic Method" section of GRI's Protocol provided to Plaintiff's counsel on April 2 and attached hereto, to take place on or before April 20, 2018. Alternatively, GRI requests that this Court issue an order compelling a manual examination of Plaintiff's computer by GRI's forensic expert in the manner outlined in the "Manual Method" of GRI's Protocol provided to Plaintiff's counsel on April 2 and attached hereto, to take place on or before April 20, 2018. GRI also requests that the Court enter an order compelling Plaintiff to provide communications received from other potential putative class members, in accordance with GRI's discovery requests.

<u>RELEVANT FACTUAL BACKGROUND</u>

A.    **<u>Plaintiff's Counsel Advertises that They Are Investigating GRI and QuoteWizard</u>**

On July 4, 2017 Plaintiff's counsel Kozonis Law, began advertising on their website kozonislaw.com that they were "investigating claims that Guaranteed Rate, Inc. violated privacy laws in respect to consumers who submitted their information through one of Guaranteed Rate's mortgage quote forms" on July 4, 2017, just one day before Plaintiff populated the Web Form. (Declaration of Givonna Long ("Long Decl.") attached hereto as Exhibit 1, ¶ 3, Ex. A) Plaintiff's

counsel's website also advertised that it was investigating whether QuoteWizard "violated phone privacy laws" on July 4, 2017. (Id.) Plaintiff's facebook friend, Nicholas Lamberis, who is also represented by Plaintiff's counsel, populated a web form on Quote Wizard's website on July 10, 2017, and sued QuoteWizard on August 3, 2017, the same day that Plaintiff filed the instant action. (Id.; *See also Nicholas Lameris v. Quotewizard.com*, LLC, 17-cv-05678, Dkt. No.1).

### B. Plaintiff Provides His Phone Number to Receive a Quote from GRI

Plaintiff alleges that on July 5, 2017 (the day after his counsel began advertising that they were investigating GRI for claims related to completion of its web forms), he filled out a GRI Web Form to obtain a free mortgage quote from GRI, and provided his cell phone number in the "Preferred Phone Number" field for that purpose. (Complaint (Dkt. No. 1), ¶¶ 27-41.) In response to his request, on July 6, he received telephone calls from GRI on the cell phone number that he provided to GRI as his "Preferred Phone Number." (Id. ¶¶ 42-44.) After GRI made two attempts to reach Plaintiff by phone that were not answered, Plaintiff answered the third call. (Id.) Plaintiff claims that the three calls that he received violated the TCPA, alleging that were made "using an ATDS" (id. ¶ 45), and were made without his consent.

With respect to Plaintiff's claim that he did not consent to receive any call from GRI, Plaintiff argues that he was unable to view on his computer screen, without scrolling, the TCPA-compliant disclosure and consent language that was placed directly beneath the fields that he populated when he requested a mortgage rate quote. Although Plaintiff claims that he "was not aware that he would be receiving . . . calls as a result of using [GRI's] website," (Compl. ¶ 45), when he answered the call from GRI, he said "I didn't think you guys were gonna call up this quick." (Long Decl., Exhibit 1, ¶ 4, Ex. B) (emphasis added). The conversation between GRI and

Plaintiff was cordial. (Id.) After this single conversation, GRI did not initiate any other call to Plaintiff.

Given Plaintiff's claim, a central focus of discovery in this case is what Plaintiff viewed on his computer screen when he populated the Web Form, whether he completed the Web Form for a proper purpose, whether he did in fact expect to receive the calls at issue, and whether Plaintiff's viewing experience was the same as other viewers. In Plaintiff's version of the Web Form, the TCPA-compliant disclosure and consent language, which appeared in the same type face as other text on the Web Form and was directly beneath the "Get your free quote" button, was removed. (*See* Dkt. No. 1, ¶27, Ex. A). The Complaint alleged that, based on this "screen shot image," the disclosure is "inconspicuously hidden" and therefore, according to Plaintiff, GRI placed a call to Plaintiff in violation of the TCPA. (*Id*. ¶34-35.) GRI has already submitted to this Court a complete and accurate version of the Web Form, as it was intended to be viewed. (Dkt No. 13, Prosser Decl., Ex. 1). That version shows that GRI's TCPA-compliant disclosure and consent language appeared directly below the "Get your free quote" button. The only way to assess this alleged discrepancy, is an examination of Plaintiff's device.

## C.     GRI's Discovery Requests and Meet and Confer Efforts

Counsel for the parties participated in an initial Federal Rule of Civil Procedure 26(f) conference on August 31, 2017. (Long Decl. ¶ 22). During that call, counsel for GRI advised Plaintiff's counsel that GRI intended to seek an inspection of Plaintiff's computer related to among other things, his claims in this case, his interactions with GRI's website, and the circumstances surrounding Plaintiff's population of the GRI webform. (Id.) GRI's counsel requested that all information related to this case be preserved. (Id.)

Shortly thereafter, on November 20, 2017, GRI served its First Set of Interrogatories and First Set of Requests for Production of Documents, seeking, among other things, to obtain

discovery concerning the circumstances surrounding the "screen shot image" of the version of the Web Form Plaintiff attached to the Complaint, and why it purportedly appeared different on Plaintiff's device from the way that it would have been displayed on any other device. Specifically, GRI sought, "[a]ll computer or mobile devices used to access the [GRI] Website, to populate the [Web Form], or to access any other website or webpage regarding mortgages and/or mortgage rates, for inspection." (Long Decl. ¶ 8, Ex. C, GRI's RFP No. 11). GRI also sought information with respect to other putative class members known to Plaintiff. For example, GRI requested the name, address and telephone number for any person that Plaintiff or his counsel believed to be a member of Plaintiff's proposed class. (Long Decl. ¶ 9 Ex. D, Interrogatory No. 18). GRI further sought "[a]ll Documents concerning or identifying any potential Putative Class Member, including Communications with potential Putative Class Members" by Plaintiff or his counsel. (Long Decl. ¶ 8 Ex. C, GRI's RFP No. 28).

On February 2, 2018, Plaintiff provided his written response objecting to GRI's request to inspect Plaintiff's computer on grounds that the request was overly broad, unduly burdensome and "not relevant to this action or whose relevance is outweighed by the invasive burdensome nature of the request." (Long Decl. ¶ 10 Ex. E, Plaintiff Response to RFP No. 11). Plaintiff did not provide any information in counsel's possession regarding putative class members, nor did he provide any communications in response to his counsel's website advertisement. (Long Decl. ¶ 11).

After Plaintiff provided his written objection, the parties exchanged email correspondence and engaged in at least three telephonic conferences wherein counsel for GRI and counsel for Plaintiff discussed Plaintiff's objection to having his computer examined and other discovery deficiencies. (Long Decl. ¶ 12). During the course of the conversations, counsel for GRI explained to counsel for Plaintiff why an examination of Plaintiff's computer, browser history, settings and

any modifications thereto, was relevant and necessary because Plaintiff's claims center on how he allegedly saw the Web Form on his computer. (Long Decl. ¶ 13). Plaintiff's counsel did not object to the relevance of the examination, but rather requested more details concerning the examination. (Long Decl. ¶ 14). With respect to the information and communication concerning other potential putative class members, Plaintiff's counsel indicated they were standing on their objections and refusal to provide such information. (Long Decl. ¶ 15).

After consulting with a forensics and electronic discovery firm, GRI's counsel explained the process that would occur during the examination and asked whether Plaintiff's counsel would agree to the inspection. (Long Decl. ¶ 16). Counsel for GRI also explained, as its expert stated, that a forensic imaging of Plaintiff's computer is the industry standard and most forensically sound method to conduct the examination. (Long Decl. ¶ 17). Plaintiff's counsel would not agree to this method of inspection. (Long Decl. ¶ 17). After following up with its forensic firm to determine feasibility, and in an effort to reach a compromise, without waiving the right to seek a forensic imaging of Plaintiff's computer if needed, GRI's counsel next inquired as to whether Plaintiff's counsel would permit a manual in-person inspection. (Long Decl. ¶ 17). Plaintiff's counsel did not indicate whether it would accept GRI's proposal, but asked that they be provided a written protocol for any proposed inspection. (Long Decl. ¶ 17).

On April 2, 2018, GRI's counsel provided a proposal from its forensic firm that included both a forensic imaging inspection method and a manual inspection method. (Long Decl. ¶ 18, Ex. F; (Declaration of Jared Sikorski ("Sikorski Decl.") attached hereto as Exhibit 2, ¶ 8, Ex. A)). Both methods make clear that they will be limited to potentially relevant data including, but not limited to, file activity, deleted data, web browser configuration settings, web browser extensions and add-ons, recreated web pages, web history, and screen shots. The GRI proposal also indicated that industry standard safeguards would be used to ensure the security and integrity of Plaintiff's

7

device.  (Long Decl. ¶ 18, Ex. F, Sikorski Decl. Ex. A).  Plaintiff's rejected both protocols proposals on the basis that the protocols "do not identify the specific files that will be accessed." (Long Decl. ¶ 20, Sikorski Decl. ¶ 12).  Plaintiff provided their version of a manual inspection protocol, which GRI's counsel shared with its forensic firm.  (Long Decl. ¶ 21, Exhibit H, Sikorski Decl. ¶ 12, Exhibit B).  GRI's forensic firm advised that Plaintiff's version is not feasible for a number of reasons, including, among other things, because it is limited to viewing only one specific folder and file, it excludes system logs where resolution settings may be found, and—most importantly—prohibits access to files that are necessary to conduct a proper examination.  (Sikorsi Decl. ¶¶ 13-14).  GRI's forensic firm also advised that Plaintiff's proposal is not possible because they do not know at this time whether the information that needs to be inspected is limited to the specific file(s) Plaintiff proposes, therefore they would not be able to conduct a fulsome inspection and would instead convert the inspection to a simple file extraction.  (Sikorski Decl. ¶¶ 13-14).

On April 6, 2018, Plaintiff was deposed by counsel for GRI.  (Long Decl ¶ 23).  During his deposition, Plaintiff testified that he deleted his browser history a few months ago.  (Id.) Plaintiff also testified during his deposition that he could not remember how he reached the GRI website, or what steps he took to navigate to the GRI web page to complete the Web Form. (Id.) Plaintiff's deletion of his web history is suspicious in light of GRI's requests back on August 31, 2017 for an inspection of his computer, which was followed by a formal document request for an inspection of Plaintiff's computer on November 20, 2017.

### D. The Screenshots Provided by Plaintiff

Further underscoring the need for a complete forensic examination of Plaintiff's computer related to the claims, is that he claims to have visited GRI's website and populated the Web Form on July 5, 2017 on his "Apple MacBook Pro Laptop Computer (2015) . . . using a Safari internet browser."  (Long Decl. ¶19, Ex. G Supplemental Response to Interrogatory No. 3).  On other dates,

Plaintiff claimed that his counsel accessed GRI's website using, among other devices, a "DELL D11S (2016)" computer (which typically use a Microsoft Windows operating system) using the Internet Explorer browser.   (Long Decl. ¶19, Ex. G).

None of the screenshots of the Web Form as Plaintiff purportedly saw it produced by Plaintiff during discovery, attached to the Complaint, or his declaration submitted with his opposition to GRI's motion to dismiss portray an image taken by an Apple MacBook using the Safari internet browser.   (Long. Decl. ¶¶ 5-6).   *Each* of those screenshots clearly show that someone was using a computer with a Microsoft Windows operating system (not an Apple operating system) using the Microsoft Internet Explorer web browser (not Safari) when those screenshots were captured.   (*See* Complaint, Dkt. No. 1, ¶27; Barrera Decl. Dkt.  20-1, Exhibit A). It is patently evident, therefore, that that none of the screenshots produced by Plaintiff thus far are reflective of what he actually saw, but instead appear to be, presumably, what his counsel may have seen.

Moreover, GRI has discovered that on July 4, 2017—the day before Plaintiff submitted his information to GRI—Plaintiff's counsel posted an online advertisement claiming that they were investigating GRI for alleged robocalls to apparently solicit plaintiffs for potential lawsuits.  (Long. Decl. ¶ 3, Ex. A).  Plaintiff admits that he did not contact his attorneys until July 7, 2017.  (Long Decl. Ex. E).  GRI, therefore, is also entitled to examine Plaintiff's computer to determine if he accessed the advertisement by his counsel soliciting potential plaintiffs prior to completing the GRI Web Form, as well as communications Plaintiff's counsel received with respect to the advertisement.

## ARGUMENT

I.  **THIS COURT SHOULD COMPEL THE FORENSIC EXAMINATION OF PLAINTIFF'S COMPUTER PURSUANT TO GRI'S DISCOVERY REQUESTS AND COMPEL PLAINTIFF TO PROVIDE INFORMATION CONCERNING OTHER PUTATIVE CLASS MEMBERS**

"A party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure ("FRCP") where another party fails to respond to a discovery request, or where the party's response is evasive or incomplete." *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001). "Under FRCP 26(b)(1), 'parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it related to the claim or defense of the party seeking discovery, or to the claim or defense of any other party[.]" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). A discovery request is relevant "if there is any possibility that the information sought may be relevant to the subject matter of the action." *AM Int'l, Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D. Ill. 1981) (citing 8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL § 2008 (1970)). "[T]he burden is upon the objecting party to show why a discovery request is improper." *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004).

### 1.     The Inspection of Plaintiff's Computer

Here, how the Web Form was displayed on Plaintiff's device is central to his claims that the TCPA-compliant disclosure language was not clearly and conspicuously displayed to him. It is also critical, whether Plaintiff completed the Web Form for a proper purpose. Accordingly, GRI is entitled to examine Plaintiff's computer with respect to any artifacts on his device relating to his claim, including any file activity, deleted data, web browser configuration settings, web browser add-ons and other information that may have affected (or not affected) how the Web Form was displayed on his device, when he accessed the GRI web page and whether he accessed the kozonislaw website before he populated the Web Form. Plaintiff has not offered any explanation as to why such an examination should not occur, other than he will be unduly burdened. That does not suffice.

More importantly, it has come to GRI's attention during Plaintiff's deposition that Plaintiff: (1) has deleted his browser history despite the fact that there was a pending request for an examination of Plaintiff's computer; and (2) does not remember how he navigated to the GRI website to complete the webform. These circumstances make the need for a forensic imaging and inspection of Plaintiff's computer even more important for several reasons. First, Plaintiff's deletion of his browser history when a pending request for an inspection of his computer was pending causes concern as to the reason for the deletion. Second, now that Plaintiff has deleted his browsing history, it may be difficult to retrieve this history during a manual inspection. Finally, it is important to know how Plaintiff reached GRI's website and the webform to understand his viewing experience, what he saw and how the webform was displayed.

The law is clear that GRI is entitled to the examination it seeks. In *Transamerica Life Ins. Co., Inc. v. Lambert*, No. 4:12-CV-1253 CAS, 2013 WL 4028275, at *2 (E.D. Mo. Aug. 7, 2013), for example, the court granted a party's motion to compel the production of an individual's computer and cell phone for forensic examination, rejecting the claim that the party would be unduly burdened by such an order. In ordering the forensic examination, the Court found that the motion should be granted because the non-moving party's "production of copies of cell phone text messages and a non-forensic copy of the computer hard drive are insufficient to respond to [the] second request for the production of the cell phone and computer themselves, as the copies do not allow for forensic examination of the devices." *Id.* Similarly, here, Plaintiff will suffer no undue burden by having his computer examined because how the Web Form displayed on his computer is central to his claim and the screenshots he provided, none of which could have possibly been taken by his device, do not allow for the forensic examination of Plaintiff's computer. *See also Chevron Corp. v. E-Tech Int'l, Inc.*, No. 10CV1146-IEG (WMc), 2011 WL 13182855, at *2 (S.D. Cal. Feb. 11, 2011) (ordering the forensic examination of a hard drive and noting that there is

"nothing in the proposed discovery that would cause this Court to conclude such discovery is 'unduly intrusive or burdensome'"). Moreover, GRI is also going to pay the costs for the forensic examination, further sinking any "unduly burdensome" argument. *See id.* ("[f]orensic examination of [the party's] hard drive will not involve an undue burden or cost . . . because [the moving party] will pay the cost of the forensic examination [and] [t]he information sought is clearly relevant to the issues and claims raised in the . . . litigation").

Because how the Web Form was displayed on Plaintiff's computer and whether he completed the Web Form for a proper purpose are central to his claims, GRI, therefore, is entitled to have Plaintiff's device examined by its forensic expert. *See Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 448 (D. Conn. 2010) (granting motion to compel forensic imaging of a computer where "there is a nexus between [the party's] claims and its need to obtain a mirror image of the computer's hard drive, warranting the imaging requested").

### 2. Documents with respect to the Kozonislaw Advertisement

Equally clear, is that GRI is entitled to have Plaintiff respond fully to its discovery requests concerning the identification of other putative class members—including any communications Plaintiff's counsel received in response to his advertisement on the kozonislaw website. Plaintiff's objection that GRI's "request calls for information protected by the attorney-client, attorney work product, or other privileges" is contrary to the law. (*See* Long Decl. Ex. E, Plaintiff's Response to RFP No. 28).

In *Searcy v. eFunds Corp.*, No. 08 C 985, 2009 U.S. Dist. LEXIS 16986, at *6-11 (N.D. Ill. Mar. 5, 2009), Judge Kocoras rejected arguments like Plaintiff makes here that potential class members' responses to counsel's solicitation were protected by the work product doctrine or the attorney-client privilege. In doing so, the court noted "[t]hough it is possible that communications made before a professional arrangement is formalized can be privileged from disclosure, the

amorphous nature of the interactions between two parties when no representation has been finalized further complicates this inquiry. In any event, assertions of privilege from disclosure must be made with particularity, expressly and with sufficient elaboration of the nature of the document or documents at issue that others can assess whether application of the privilege is appropriate." *Id.*, at \*9-10; *see id.*, at \*10 ("[c]onclusory statements of privilege are not sufficient to establish that a large group of documents is protected, and the fact that some documents within the group may be privileged does not mandate a conclusion that all are").

Accordingly, Plaintiff is required to provide documents with respect to his counsel's communication with potential putative class members, and identify them in response to GRI's interrogatory. *See Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441 (LAK), 2002 U.S. Dist. LEXIS 26318, at \*3 (S.D.N.Y. Oct. 8, 2002) (compelling production of documents and stating "letters to prospective clients to encourage their involvement in a class action and a proposed form of retainer agreement, regardless of whether the sending of them was in furtherance of the interest of existing clients, are not communications between attorney and client and are not confidential"); *id.* (to accept Plaintiff's privilege argument "would take the attorney-client privilege to a galaxy far, far away from its roots and one that it is unnecessary to visit").

## CONCLUSION

For the foregoing reasons, GRI respectfully requests that this Court grant GRI's motion and enter an order compelling the forensic examination of Plaintiff's computer by GRI's forensic expert in the manner outlined in the "Forensic Method" section of GRI's Protocol provided to Plaintiff's counsel on April 2, to take place on or before April 20, 2018. Alternatively, GRI requests that this Court issue an order compelling a manual examination of Plaintiff's computer by GRI's forensic expert in the manner outlined in the "Manual Method" of GRI's Protocol provided to Plaintiff's counsel on April 2, to take place on or before April 20, 2018. GRI further

requests that this Court compel Plaintiff to respond to the discovery requests concerning other potential putative class members.

Dated:  April 6, 2018

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By:  */s/ Givonna S. Long*
Givonna S. Long (#6290076)
Kelley Drye & Warren LLP
333 W. Wacker Dr.
Chicago, Illinois 60606
Phone (312) 857-7084
glong@kelleydrye.com

Lauri A. Mazzuchetti (*pro hac vice*)
Kelley Drye & Warren LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Phone (973) 503-5900
lmazzuchetti@kelleydrye.com


*Attorneys for Defendant Guaranteed Rate, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby deposes and states that on April 6, 2018, she caused the foregoing, **Memorandum In Support of Motion to Compel the Examination of Plaintiff's Computer and to Provide Relevant Discovery**, to be electronically filed using the CM/ECF system which will send notification of such filing to all attorneys of record.

By: */s/ Givonna S. Long*
Givonna S. Long (#6290076)
Kelley Drye & Warren LLP
333 W. Wacker Dr.
Chicago, Illinois 60606
Phone (312) 857-7084
glong@kelleydrye.com

*Attorneys for Defendant Guaranteed Rate, Inc.*